1  David N. Makous, SBN 82409
2  Matthew J. Soroky, SBN 258230
   Keith Fichtelman, SBN 262476
3  LEE, HONG, DEGERMAN, KANG & WAIMEY
4  660 South Figueroa Street, Suite 2300
   Los Angeles, California 90017
5  Telephone: (213) 623-2221
   Facsimile:  (213) 623-2211
6

7  Attorneys for Plaintiffs, U.S. Marine Surveyors, Inc.
8  and U.S. Vessel Documentation

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13 U.S. MARINE SURVEYORS, INC., a California corporation; U.S. VESSEL DOCUMENTATION, a California corporation, | CASE NO.: 2:16-cv-05360-PA (FFMx) |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION AND FOR LEAVE TO TAKE EXPEDITED DISCOVERY** |
| vs. | |
| EDWARD RIENER, an individual; EDWARD RIENER D.B.A. ELEMENTAL WEB DESIGN, an unknown entity, | |
| Defendants. | |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

---

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

I. **EX PARTE APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**……………………………….... 1

    A. **Legal Standard** …………………………………….......... 1

    B. **Urgent Relief Is Sought Due to Loss of Control of Plaintiff's Entire Businesses** …………………………... 2

    C. **Summary of Facts and Wrongful Acts** …………………. 4

    D. **July 2016: Defendants Conversion of Plaintiffs' Businesses, Cybercrimes, Confusion of the Public, Interfering with Plaintiffs' Past and Future Contracts and Economic Advantages Entitles Plaintiffs to a TRO and Preliminary Injunction; Irreparable Injury is Plain; Damages Are Not Adequate** …………………… 5

    E. **Discussion**……………………………………………...7

        (1) **Likelihood of Success on the Merits** ……………… 7

            A. *Violation of 43a of the Lanham Act* …………. 7

            B. *Unfair Competition under Cal. Bus. & Prof. Code § 17200* ……………………………. 9

            C. *Tortious Interference with Prospective Economic Advantage* ……………………. 10

            D. *Conversion* ……………………………….. 11

            E. *Cybersquatting* …………………………..... 13

            F. **Cybercrimes (Cal Penal C 502) Provide Civil Remedy And Injunctive Relief Is Called For As The Plaintiffs And The Public Will Continue To Be Defrauded And Victimized** ……………………………….. 14

            G. **Click Fraud Constitutes An Unfair and Unlawful Business Practice And A Violation of Cal Penal Code 502** …………... 15

                1. **Click Fraud is Tortious Conduct** …… 16

                2. **Click Fraud is Unlawful Under The Computer Fraud and Abuse Act and by Analogy Section 502(c) of the California Penal Code** …..…………… 17

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING O9RDER AND OSC RE: PRELIMINARY INJUNCTION

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

4

**H.    Injunctive Relief is Called For to Stop
Tortious Acts of Unfair Competition and
Violations of 502**…………………..…….. **17**

5

**(2)    Irreparable Harm** ………………………….... **18**

6

7

**(3)    Balance of the Hardship Plaintiffs** …………..…… **19**

**(4)    Other Issues** ………………………………..…. **20**

8

**A.    Mandatory Injunctions** ………………..…… **20**

9

10

**B.    Expedited Discovery Is Necessary in
Exigent Circumstances to Uncover
All of Defendants Acts and Wrongful
Behavior to Support Our Preliminary
Injunction** ……………………………………. **20**

11

12

**CONCLUSION**……………………………………………..…….. **22**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR
A TEMPORARY RESTRAINING O9RDER AND OSC RE: PRELIMINARY INJUNCTION

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

# I.   *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

Pursuant to F.R.C.P. 65, Plaintiffs U.S. Marine Surveyors, Inc. and U.S. Vessel Documentation (collectively, "Plaintiffs"), apply *ex parte* for a Temporary Restraining Order ("TRO") and Order to Show Cause re Preliminary Injunction as Defendants are causing irreparable injury to Plaintiffs by unlawfully appropriating or hijacking Plaintiffs businesses as detailed in the Complaint and Declarations.

Plaintiffs filed this lawsuit on July 19, 2016 alleging, *inter alia*, that defendants are infringing copyrights (not yet registered), converted Plaintiffs' entire businesses, falsely representing themselves to actively mislead the public, interfering with their contracts and prospective customers, appropriating Plaintiffs' trade secrets, committing unfair competition and cyber-crimes, and conducting click fraud - all to the highest degree.

Plaintiffs now seek a TRO to require Defendants, pursuant to F.R.C.P. 65(d), to cease this behavior and provide Plaintiffs with full access and control of their businesses as detailed Plaintiffs' proposed order and notice OSC re: Preliminary Injunction.   Plaintiffs also seek leave to take expedited discovery such that Defendants have five (5) days to respond to F.R.C.P. 34 document requests and two (2) days to appear in response to a deposition notice under F.C.R.P. 30 in preparation of the preliminary injunction.

## A. Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A preliminary injunction is

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

1   an "extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

2   129 S. Ct. 365, 375 (2008). The Ninth Circuit summarized the Supreme Court's

3   clarification of the standard for granting preliminary injunctions in *Winter* as

4   follows: "[a] plaintiff seeking a preliminary injunction must establish that he is

5   likely to succeed on the merits, that he is likely to suffer irreparable harm in the

6   absence of preliminary relief, that the balance of equities tips in his favor, and

7   that an injunction is in the public interest." *Am. Trucking Ass'n, Inc. v. City of

8   Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see also Cal Pharms. Ass'n v.

9   Maxwell-Jolly*, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious

10  questions going to the merits' and a hardship balance that tips sharply toward the

11  plaintiff can support issuance of an injunction, assuming the other two elements

12  of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632

13  F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the

14  movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v.

15  Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

16      Mandatory injunctions are "subject to a heightened scrutiny and should not

17  be issued unless the facts and law *clearly favor* the moving party." *Dahl v. HEM

18  Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (emphasis added).

19

20  **B.  <u>Urgent Relief Is Sought Due to Loss of Control of Plaintiffs' Entire

21      Businesses</u>**

22

23      The following is the basis for this urgent relief:

24      1.    Plaintiffs allege that their former web designer (Defendant Riener)

25  engaged in a calculated and premeditated scheme to hijack Plaintiffs' thriving

26  marine surveyor and vessel documentation businesses, and to commit brazen

27  identity theft by now holding out to the public that these web-based businesses

28  are his own, while fully concealing the theft/conversion.

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

2.      As greatly detailed in the Declaration of John Soria filed herewith (paras. 8 et seq.), and the Complaint and its Exhibits, when Plaintiffs advised Riener that they were switching web administrators, Riener out of the blue, on July 1, 2016, demanded that he immediately be paid $50,000 (a fully made up extortionary amount) from Plaintiffs or else he would shut down their websites, including vesseldocumentation.us (JS, Para 12).  Plaintiffs refused to pay, and within hours on July 1, Plaintiffs were fully shut down. During the next few days Riener proceeded to completely convert their businesses to his own – lock, stock, and barrel.

3.      Customers and clients are confused.  The public interest in stopping this confusion and deceit is clear. The public has been and continues to be plainly deceived and in no way able to ascertain and understand that US Vessel Documentation and US Marine Surveyors are gone, and/or that an imposter has replaced them.

4.      Defendants converted and misappropriated ALL of Plaintiffs' businesses, proprietary information, financials, email files, customer actions and activities past and present, all of Plaintiffs' business and personal communications, customer identities and preferences, payment histories and profitability, all located on the companies' servers.

5.      Plaintiffs could not even access their own email accounts as Defendants have locked them out and blocked the sites, while keeping the active domains of vesseldocumentation.us and usmarinesurveyors.com.  Riener also registered boatdocumentation.us on July 3 and uses it to re-direct web traffic to vesseldocumentation.us.

6.      Riener is reaping the benefits of Plaintiffs' business, labor and goodwill developed over the prior 18 months.  Needless to say, Riener's acts have caused Plaintiffs massive loss of revenues and increasing and irreparable damage to their goodwill and reputation.

3

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

7.     Damages are not adequate.   Plaintiffs fear that Riener is likely without financial means to pay any damages of consequence to Plaintiffs.

**C. <u>Summary of Facts and Wrongful Acts</u>**

The businesses belong to the Plaintiffs and their principals. (Decl. JS, entire). They started them and incorporated them (JS, para. 1e, 1ff).   Only selected staff operated these businesses, not Riener. Riener had nothing to do with operation, payments, revenues, expenses, customer relations, customer service, facilities, or equipment. (JS, para. 1f, 1r). The businesses attracted customers primarily through ecommerce and was serviced online, by email, in person and on the phone (JS, para 1r).  Plaintiffs' customers paid them directly through Plaintiffs' own "authorize.net" payment sites. (JS, paras. 1jj, 1ll, 1mm).

Plaintiff USMS employed Riener as a part time agent from May 2015 to June 2016 to work solely under their direction and control.  Such control was complete.  (Decl. JS, paras. 1n, 1q, 1z, 1aa – ee, hh-ii, kk, nn, and 3).  Riener acted solely as their agent and understood such, and so represented his responsibilities to Plaintiffs on many occasions.  Plaintiffs owned their websites, domain names, and server host accounts and paid for them (JS, paras. 1c, 1g, 1l, 1o, 1t, paras 10-11). Initial terms and fees were set out in a July 2015 signed agreement (Ex 1, Complaint) and these terms were modified throughout by the parties' exchanges and course of dealing (JS, e.g paras. 1x, 1z, and *passim*). Copyright notices were posted in the names of USMS and USVD on the two primary websites: usmarinesurveyors.com and vesseldocumentation.us. (Complaint, Ex 5).  Plaintiffs demanded secrecy and non-disclosure from Riener. (JS, para. 1j)

Plaintiffs created social media pages and when Riener requested access, as he claimed was necessary, they gave it to him (JS, Para. 1i).  Throughout the

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

period from May 2015 to July 1, 2016, Riener never asserted ownership or "leasing" of copyrights, content, domain names or any intellectual property or operational rights relating to any of these businesses. (JS, para. 4, 13, and throughout). When the Plaintiffs demanded transfer of these rights, or the necessary disclosure to gain their own access, Riener denied it and to this day continues to exclude Plaintiffs. (JS, paras. 8-9). When the hijacking occurred on July 1, Plaintiffs were grossing $35,000 a week (JS, para 2). Riener just got greedy.

### D. July 2016: Defendants Conversion of Plaintiffs' Businesses, Cybercrimes, Confusion of the Public, Interfering with Plaintiffs' Past and Future Contracts and Economic Advantages Entitles Plaintiffs to a TRO and Preliminary Injunction; Irreparable Injury is Plain; Damages Are Not Adequate

Plaintiffs were wronged by Defendants' acts of conversion, cybercrimes, false representation, and interferences - as presently known - enumerated below:

a. Extortion demand by Riener on July 1, for $50,000 (JS, para 12)

b. Actually shutting down Plaintiffs' websites on July 1 (JS, para 16, 17, 21)

c. Threatening to sell Plaintiffs' businesses to the highest bidder (JS, para 14)

d. Obtaining illegal access to Plaintiffs' customer information (before July 2016) while threatening to delete it on July 1 (JS, para. 15), and requesting unnecessary log in and password access before July 2016 (JS, Paras. 6, 36)

e. False representations about Plaintiffs' sites such as it is down for maintenance, or sold, in July 2016 (JS, paras. 18, 31-34)

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

f.   Accessing Plaintiffs' accounts, changing account names, and passwords, and denying all ability for Plaintiffs to access their accounts and email accounts, accessing Plaintiffs' credit card and their customer information, blocking Plaintiffs' social media access, rebranding Plaintiffs' social media pages, and adding false links to vesseldocumentation.us (JS, paras. 19, 20, 22(a) – (f), 27, 29, 30)

g.   False representation, palming off, and consumer fraud by causing constant and massive confusion to the public who are misled into dealing with Defendants without knowing it is not Plaintiffs' operation, causing the public to make fraud allegations against Plaintiffs, when Plaintiffs have nothing now to do with the operation, and causing customers to demand refunds which come from Plaintiffs' "authorize.net" accounts, and contending that the "business has been sold", and more (JS, Paras. 31-37)

h.   On July 10 reactivating vesseldocumentation.us without Plaintiffs' involvement as a false and misleading version of their business with virtually identical content and appearance exclusively under Riener's control (JS, paras. 23, 28)

i.   Replaced copyright notices of USVD name into "boat documentation us", Riener's new alias. (JS, para. 24)

j.   Deactivated usmarinesurveyors.com website and redirected it to the (hijacked) vesseldocumentation.us domain/website, with no control by Plaintiffs. (JS, para. 25)

k.   Registered boatdocumentation.us and linked it to Plaintiffs' vesseldocumentation.us domain and website (JS, para 26)

l.   Conducting daily and wholesale click fraud on our clients new agent company USCG Documentation, Inc. (uscgdocumentatioin.us site)

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

1  causing recurrent inability to advertise and function at much higher

2  cost. (JS, paras. 37-40)

3

## E. DISCUSSION

5

### (1)  Likelihood of Success on the Merits
#### A.  Violation of 43a of the Lanham Act.

8

9  This case is very similar to a "counterfeit" false representation case.  The

10 representations by Defendant and his agents are false and prohibited by the

11 Lanham Act.  1125(a):

12 I.  Section 1125, titled "False designations of origin, false descriptions, and

13 dilution forbidden," states in pertinent part:

14 (a) Civil action.

15 (1)  Any person who, on or in connection with any goods or services,

16 or any container for goods, uses in commerce any word, term, name,

17 symbol, or device, or any combination thereof, or any **false**

18 **designation of origin, false or misleading description of fact, or**

19 **false or misleading representation of fact, which--**

20 **(A)  is likely to cause confusion, or to cause mistake, or to**

21 **deceive as to the affiliation, connection, or association of**

22 **such person with another person, or as to the origin,**

23 **sponsorship, or approval of his or her goods, services, or**

24 **commercial activities by another person,**

25 Courts regularly issue *ex parte* seizure orders to prevent, as here, the

26 further sale and distribution of counterfeit services. In essence Plaintiffs are

27 asking the Court to seize and return Plaintiffs' businesses to them.  *See Fimab-*

28 *Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Export Inc.,*

7

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

601 F.6 Supp. 1, 2 (S.D. Fla. 1983) ("The weight of authority around the country appears to favor the   granting of such *ex parte* seizures in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article"). *See also In re Vuitton et Fils S.A.,* 606 F.2d 1, 4 (2d Cir. 1979); *In re Circuit Breaker Litig.,* No. CV 88-3012 CBM, 1997 WL 580570 at *1 (C.D. Cal. Apr. 1, 1997); *Sega Enters. Ltd. v. MAPH!A,* 948 F.Supp. 923,927 (N.D. Cal. 1996); *Hunting World Inc. v. Reboans Inc.,* 24 U.S.P.Q.2d 1844, 1845-47 (N.D. Cal. 1992).

Defendants are intentionally causing rampant confusion at Plaintiffs' expense, and hence are "likely to cause" consumers to mistakenly believe that defendants are Plaintiffs.  The summary of facts and evidence presented shows that Plaintiffs are likely to succeed on the merits of this claim.

 Plaintiffs also contend that their showing of a likelihood of success on the merits in this case establishes, *as a matter of law*, that Plaintiffs will be irreparably injured by continued counterfeiting.  *Metro Publ'g, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("when plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm"); *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1574 (S.D.Cal. 1996), aff'd, 109 F3d 1394 (9th Cir. 1997).

Clearly, as well, there is substantial public interest in stopping Defendants' charade as the public will continue to be deceived. Of course allowing it to continue at all will result in complete destruction of Plaintiffs' reputable names and goodwill, as well as of their principals, in the minds of the public as well as government regulators such as the USCG itself, thereby resulting in continued irreparable injury to Plaintiffs.  *Vuitton v. White,* 945 F.2d 569, 576 (3d Cir.17 1991) (the potential damage to reputation and a likelihood of confusion constitute irreparable injury, and this was expressly recognized by Congress when it enacted the Trademark Counterfeiting Act); *Power Test Petroleum Distrib. v. Calcu Gas,*

8

1   *Inc.*, 754 F.2d 91,95 (2d Cir. 1985) (irreparable injury exists when plaintiff
2   establishes it will lose control over the reputation of its trademark); *Apple*
3   *Computer, Inc. v. Formula Int'/Inc.*, 725 F.2d 521,526 (9th Cir. 1984); *Joy Mfg.*
4   *Co. v. CGM Valve & Gauge Co., Inc.*, 730 F. Supp. 1387, 1394 (S.D. Tex. 1989)
5   (a likelihood of confusion constitutes immediate and irreparable harm since the
6   trademark owner is no longer able to control its own reputation and the goodwill
7   associated with the mark and its products).

8       Evidence that use of a mark or name has already caused actual confusion as
9   to the source of a product or service is "persuasive proof that future confusion is
10  likely." *AMF v. Sleekcraft*, 599 F.2d 341, 352 (9th Cir. 1979).  Several confused
11  and angry consumers have contacted plaintiffs.   (JS Decl.)

12      The defendants' intent is damning as well. Where the alleged infringer
13  knowingly adopts a mark or name similar to another, the court may choose to
14  presume an intent to deceive the consuming public. See *Sleekcraft* at 354.

16  ### B.  Unfair Competition under Cal. Bus & Prof. Code § 17200

18      California law prohibits unfair competition, defined as "any unlawful,
19  unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.
20  Because section 17200 is written in the disjunctive, it prohibits three separate
21  types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or
22  practices, and (3) fraudulent acts or practices. *Cel-Tech Communications, Inc. v.*
23  *Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal. Rptr. 2d 548,
24  973 P.2d 527 (1999).

25      An action for unfair competition section 17200 is "substantially congruent"
26  to a trademark infringement claim under the Lanham Act.  *Int'l Order of Job's*
27  *Daughters v. Lindeburg and Co.*, 633 F.2d 912, 916 (9th Cir.1980). Under both,
28  the test is "whether the public is likely to be deceived or confused by the

9

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

similarity of the marks." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.1988) (citations omitted).

In the instant case, the likelihood of deception or confusion has been detailed above. Therefore, Plaintiffs submit to the Court that they are likely to succeed on the merits of the section 17200 claim.

### C.  Tortious Interference with Prospective Economic Advantage

Plaintiffs are likely to succeed on their claim for tortious interference with prospective economic advantage because defendants intentionally used a mark to deliberately interfere with plaintiffs' prospective customers, and the defendants intentionally acted to deceive customers as to the origin of their services.

To maintain a claim for tortious interference with prospective economic advantage, a plaintiff must show:

(1) an economic relationship between plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts by the defendant to disrupt the relationship; (4) actual disruption of the relationship; (5) economic harm to the plaintiff proximately caused by the acts of the defendants; (6) conduct that was wrongful by some legal measure other than the fact of interference itself.

5 Witkin, Summary of California Law § 742.

In the instant case, plaintiffs have shown they had an economic relationship with customers and potential customers. Further, defendants knew of plaintiffs' customer-relationships. Defendants intentionally disrupted these relationships by taking plaintiffs' place. These actions caused an actual disruption in the relationships, proximately causing economic harm to plaintiffs. Finally, the conduct is wrongful under the Lanham Act, 17200, cybercrimes and conversions.

10

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

1    Plaintiffs are likely to succeed on the tortious interference with prospective

2    economic advantage claim.

3              *D.  Conversion*

4

5         To succeed on a claim for conversion, plaintiffs must show (1) a right to

6    own or possess certain property; (2) defendants wrongfully dispossessed plaintiffs

7    of their right; and (3) damages.  *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying*

8    *Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).

9         Courts have explicitly ruled that internet websites and related intellectual

10   property can qualify as property subject to a conversion claim.  *See Astroworks,*

11   *Inc. v. Astroexhibit, Inc.,* 257 F.Supp.2d 609, 618 (S.D.N.Y. 2003) (holding that a

12   website is a form of property that can be converted.); *see also In re CTLI, LLC*,

13   528 B.R. 359, 366-367 (S.D. Tex. Bankr. 2015) (holding that a business has a

14   property interest in its social media accounts, such as Facebook and Twitter).

15        For purposes of a preliminary injunction, the Ninth Circuit has held that

16   "[e]vidence of threatened loss of prospective customers or goodwill certainly

17   supports a finding of the possibility of irreparable harm."  *Stuhlbarg Int'l Sales*

18   *Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

19        There can be no question that Plaintiffs own their own business.  Plaintiffs,

20   and their principals, started the businesses and incorporated the businesses.  (JS,

21   para. 1e, 1ff).  Defendants had no involvement in operation, payments, revenues,

22   expenses, customer relations, customer service, facilities, or equipment of the

23   businesses.  (JS, para. 1f, 1r).

24        Further, Plaintiffs own their websites, social media accounts, and related

25   intellectual property.  Plaintiffs created the social media accounts.  (JS, Para. 1i).

26   The websites at issue were created completely under the direction and control of

27   Plaintiffs.  (JS, paras. 1n, 1q, 1z, 1aa – ee, hh-ii, kk, nn, and 3).  The facts clearly

28   establish that Plaintiffs were the proper owners of the content displayed on the

11

websites.  *See*  17 U.S.C. § 201(b) (party for whom work was prepared owns all of the rights comprised in the copyright of such material); *Siniouguine v. Mediachase Ltd.*, 2012 U.S. Dist. LEXIS 87190, *17-18 (C.D. Cal. June 11, 2012 (holding that computer program belonged to company who had "specially commissioned" contractor to create program); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.,* 2004 U.S. Dist. LEXIS 15668, *25 (S.D.N.Y. Aug. 9, 2004) (holding that work that "specially ordered and commissioned" by plaintiff belonged to plaintiff rather than contractor).

Moreover, Defendants represented to Plaintiffs during the course of the work that Plaintiffs would own the websites created.  JS, Exh. 8a.  The contract between the parties also gave Plaintiffs the right to the transfer of the "intellectual property, the site build, SQL server data, and the domain name" upon demand (Complaint, Ex. 1.) – clearly evidencing Plaintiffs' ownership rights over such property.  *See Siniouguine*, 2012 U.S. Dist. LEXIS 87190 at *19 (holding that writing must only "merely show an agreement to transfer copyright" in order to do so).

Defendants took control of Plaintiffs' property through deceit and other wrongful acts.  As discussed further above, Defendants obtained control over Plaintiffs' property through acts that violate California law (e.g. Cal. Pen. C. § 502) and fraud.  For instance, Defendants made numerous misrepresentations to Plaintiffs including Defendants stating repeatedly to Plaintiffs that Plaintiffs would have sole ownership of the domain names and websites, but in fact registering the domain names in Defendant's name instead.  *See JS,* paras. 1c, 1g, 1l, 1o, 1t, paras 10-11.  Such deceit is the "essence of conversion." *Astroworks, Inc.,* 257 F.Supp.2d at 618 (holding that allegations that party obtained control over intellectual property, including a website, through misrepresentation and fraud could constitute an unlawful conversion).

Finally, not only have Plaintiffs sufficiently evidenced that they are being

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

damaged by Defendants' wrongful conversion to show that they are likely to prevail on their conversion claim, Plaintiffs' evidence demonstrates that Plaintiffs' reputation and goodwill are being irreparably damaged to justify issuance of a temporary restraining order and preliminary injunction.  JS para. 31-35; *see Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596, *24-25 (N.D. Cal. Sept. 4, 2009) ("The loss of good will and damage to reputation are considered irreparable due to the inherent difficulty in quantifying such loss.").

Plaintiffs owned two businesses. Defendants wrongfully dispossessed plaintiffs of both of these businesses and their revenues and assets by covertly taking ownership of them.   Plaintiffs have shown they suffered damages. Plaintiffs are likely to succeed on the merits of the conversion claim.

## E.  Cybersquatting

Plaintiffs have shown that defendants have malicious intent and have committed cyberpiracy by registering, trafficking, converting, and using Plaintiffs' domain names and websites.  15 USC 1125(d), The Anticybersquatting Consumer Protection Act ("ACPA") provides that a violation occurs when a domain name registrant (1) registers, uses, or traffics in a domain name that (2) is identical or confusingly similar to a distinctive or famous trademark, with (3) bad faith intent to profit from the trademark.

In the instant case, plaintiffs have shown a likelihood that defendants have committed cybersquatting. The Defendants registered/used a domain name that are Plaintiffs properties, and comprise Plaintiffs tradenames - with the bad faith intent to profit.  The bad faith is evidenced by their covert control of the domains and the websites, and the exclusion of plaintiffs. Defendants have a bad faith intent to profit from the trademark by using the site.

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

13

Plaintiffs ask the court to order the return of the domain names by TRO and Preliminary Injunction.

## F. Cybercrimes (Cal Penal C 502) Provide Civil Remedy And Injunctive Relief Is Called For As The Plaintiffs And The Public Will Continue To Be Defrauded And Victimized

Riener violated Section 502(c) of the California Penal Code, at least in the following sections, and per the statute, injunctive civil relief is applicable:

- o (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

- o (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

- o (5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

- o (9) Knowingly and without permission uses the Internet domain name or profile of another individual, corporation, or entity in connection with the sending of one or more electronic mail messages or posts and thereby damages or causes damage to a computer, computer data, computer system, or computer network. (d)

14

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

It seems clear that Riener has committed all of the above crimes by his knowing access:

- to deceive and extort,
- to take copies,
- to disrupt services to authorized persons, and
- to use domain names to send emails.

These actions are damaging Plaintiffs and their employees, in express violation of the provisions of section 502(c) (1)(2)(5) and (9) for which Plaintiffs have standing to seek civil remedy and court intervention.  Likelihood of success on the merits is clear, and damages will be inadequate. Furthermore the public interest is large in stopping Defendants and his collaborators from further injury.

## G. Click Fraud Constitutes An Unfair And Unlawful Business Practice And A Violation Of Cal Penal Code 502

Defendant is conducting this special type of unfair competition against Plaintiffs' businesses.  Precedent exists to stop it. "Click fraud" is a common term in the internet advertising industry where companies employ a pay-per-click advertising system.  Under such a system, an advertiser contracts with a search engine such as Google, Yahoo!, or Microsoft, to post their advertisements on internet searches based on certain keywords appearing in a user's internet search. The advertiser will be charged based on how many users click on the advertisement.

Click fraud occurs when a person or computer program clicks on an online ad solely to generate the fees resulting from the pay-per-click advertising model, or to use up the advertising budget of the advertiser, hence differing types of fraud:

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

15

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

a. For instance, a company posting advertisements on its websites can commit click fraud in order to generate more revenue for itself by charging the advertiser for a greater number of clicks. *See WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014 U.S. Dist. LEXIS 80978, * 4 (N.D. Cal. June 12, 2014) (Plaintiff alleged that defendant engaged in click fraud to increase fees owed by plaintiff to defendant);

b. Click fraud can also be used by competitors to exhaust one companies' advertising budget so that its advertisements will appear less and other advertisements will be seen more prominently by actual users. *See InCorp Servs. v. Does 1-10*, 2011 U.S. Dist. LEXIS 129848, *2 (N.D. Cal. Nov. 9, 2011) (Plaintiff alleged that defendants engaged in click fraud scheme to deplete plaintiff's advertising budget so that defendants' advertisements would be more visible to users).

## 1. Click Fraud is Tortious Conduct

Courts have specifically found that click fraud can form the basis of unlawful or improper conduct supporting a tort claim. In *WeBoost Media S.R.L. v. LookSmart Ltd.*, the court found that tort claims for intentional interference with contractual and prospective economic relations were supported by an alleged click fraud scheme. *WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014 U.S. Dist. LEXIS 80978, *25-26 (N.D. Cal. June 12, 2014). The *WeBoost Media* court applied the standard articulated in *Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal. 4th 1134 (2003), which requires a tortious interference claim to be predicated on an "independently wrongful" act which is proscribed by some common law or statute. *Id.* at 1158. The *WeBoost Media* court found that the allegations that the defendants had created and engaged in a click fraud scheme adequately pled "wrongful acts" to support the intentional interference claims since the plaintiffs had pled that the click fraud was malicious and commercially useless. *WeBoost Media*, 2014 U.S. Dist. LEXIS 80978 at *26.

16

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

## 2. Click Fraud is Unlawful Under The Computer Fraud And Abuse Act and By Analogy Section 502(c) of the California Penal Code

Courts have also explicitly found that click fraud violates federal law. In *Microsoft Corp. v. Doe*, 2014 U.S. Dist. LEXIS 48398 (E.D.Va. Jan. 6, 2014), a court found that the defendant violated section 1030 of Title 18 of the United States Code, referred to as the Computer Fraud and Abuse Act ("CFAA"), based, in part, on a click fraud scheme. *Id.* at *16-17. The CFAA, in part, penalizes a party that "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage." 18 U.S.C. § 1030(a)(5)(c). The court found that the defendants intentionally accessed computers and "invisibly generat[ed] a large number of fraudulent clicks that defendant monetized through fraud upon the online advertising ecosystem." *Microsoft Corp.*, 2014 U.S. Dist. LEXIS 48398 at *17. The Court held that such acts violated the CFAA. *Id.*

By analogy such behavior would also violate the California Penal Code section 502 which penalizes certain computer crimes. For instance, click fraud involves knowingly accessing a computer or computer system to "devise or execute a scheme to defraud". Cal. Pen. C. § 502(c)(1). Also, click fraud violates Section 502 by knowingly, and without permission, using computer services and/or accessing a computer, computer system, or computer network. Cal. Pen. C. § 502(c)(3), (c)(7).

## H. Injunctive Relief is Called For to Stop Tortious Acts of Unfair Competition and Violations of 502

Cal B&PC 17200 and Cal Penal C 502(e)(1) provide for injunctive relief to prevent cybercrimes from continuing. Here, because of the urgency, Plaintiffs are asking the Court to do so in the form of a TRO and preliminary injunction.

17

The Plaintiff in the case of *Tagged, Inc. v. Doe*, 2010 U.S. Dist. LEXIS 5428, at *
33-34 (N.D. Cal 2010), sought a default and in granting it the court permanently
enjoined the defendant from further (spamming) violations of the Federal CFAA,
18 U.S.C. 1030(g), and California Penal Code Section 502(e)(1) based on:

- Defendant's failure to appear in this action or respond to the allegations in the complaint give no indication that he would stop his spamming activities in the future;
- Plaintiff had attempted to prevent spamming by limiting the number of messages a Tagged user can send out in a day, but defendant created multiple fraudulent Tagged accounts to circumvent plaintiff's security measures;
- Defendant also deliberately implemented other tactics to circumvent plaintiff's security measures such as creating intermediary landing pages and using IP addresses from other parts of the world.
- Plaintiff sufficiently has demonstrated a reasonable likelihood of defendant's future violations.

Riener will not stop without a court order.

### (2)  Irreparable Harm

Plaintiffs contend that we are entitled to a presumption of irreparable injury
because we have shown the likelihood of success on the merits on all of our
claims, including Lanham Act claims. Plaintiffs are certain that they have and
will continue to suffer damage to their business reputation, trade marks and
names, and goodwill.

A preliminary injunction "may only be granted when the moving party has
demonstrated a significant threat of irreparable injury." *Simula, Inc v. Autoliv,
Inc.*, 175 F.3d 716, 725 (9th Cir. 1999).Establishing a risk of future harm is

18

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

insufficient, **the harm must be imminent**. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  The normal calculus is altered somewhat in a trademark infringement or unfair competition case, in that "[i]rreparable injury is ordinarily presumed upon a showing of a likelihood of success." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir.2007); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir.1989) ("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").  Therefore, we ask the court here to presume irreparable harm.

Even without this presumption, we have demonstrated the threat of irreparable harm. In *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001), the Ninth Circuit found threatened loss of prospective customers and goodwill constitutes irreparable harm in the trademark context. In the instant case, plaintiffs have shown defendants have already taken prospective customers.

We ask the Court to hold that plaintiffs have met the irreparable harm requirement.

### (3).  Balance of the Hardships

Before an injunction may issue, the court must weigh the hardship. "[T]he real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is *improperly* granted or denied."  *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 284 (4th Cir. 2002).

In the instant case, the total destruction to Plaintiffs by loss of ownership of their businesses caused by Defendants vastly outweighs whatever possible claim Defendant could have. If the injunctions are not issued, plaintiffs will continue to suffer injury to their business and loss of good will in the community. If the

19

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

injunction is issued, defendants will be forced to simply stop stealing Plaintiffs' businesses and stop confusing the public.

### (4)  Other Issues

### A.  *Mandatory Injunctions*

We contend that we have shown that "the facts and law clearly favor the moving party."  *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993), and a mandatory injunction is proper.

### B.  Expedited Discovery Is Necessary in Exigent Circumstances to Uncover All of Defendants' Acts and Wrongful Behavior to Support Our Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 26(d), a party "may not seek discovery from any source" prior to the conference required by Rule 26(f), which must take place at least 21 days before the initial Case Management Conference. Fed. R. Civ. P. 26(d), (f). Courts within the Ninth Circuit generally use the "good cause" standard to determine whether to permit discovery prior to a Rule 26(f) conference. *See, e.g., American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *American LegalNet*, 673 F. Supp. 2d at 1066.  In determining whether good cause justifies expedited discovery, courts commonly consider factors including: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at

20

LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Los Angeles, California 90017

1067.

Plaintiffs have good cause to seek expedited discovery because such expedited discovery is routinely granted in cases where defendants, as here, are using counterfeit like activities and false representations in violation of the Lanham Act and other laws to deceive the public and the trade. *See Sony v Computer Entertainment America Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 978 (N.D. Cal. 1999); *Sega Enters. Ltd. v. Accolade, Inc.,* 785 F. Supp. 1392, 1401 (N.D. Cal. 1992) (district court granted expedited discovery in connection with a motion for preliminary injunction based on trademark and copyright infringement claims), *aff'd in part & denied in part on other grounds*, 977 F.2d 1510 (9th Cir. 1992); *Twentieth Century Fox Film Corp. v. Mow Trading Corp.,* 749 F. Supp. 473 at 475 (S.D.N.Y. 1990).

An order expediting discovery will provide Plaintiffs an opportunity to discover promptly the full nature and scope of the defendants' activities, including the identity of others acting in concert with it, enabling us to pursue and stop such, as well as protecting the public from continuing deception and avoiding continuing irreparable injury.

Defendants have also threatened to clean out all of the customer information of Plaintiffs (JS, para 15). This most certainly on its own is good cause.

Moreover, the requested expedited discovery will not pose a substantial hardship on the defendants since we will be seeking relevant documents and testimony that should be readily available to the defendants. See *Soler v. G&U, Inc.*, 86 F.R.D. 524, 531 (S.D.N.Y. 1980) (expedited discovery ordered concerning information readily available to defendant). In any event, any possible inconvenience to defendants from such expedited discovery is insubstantial in comparison to the continuing irreparable injury.

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Court enter a TRO and an Order to Show Cause re Preliminary Injunction, and grant leave to take expedited discovery.

DATED:  July 28, 2016

**LEE, HONG, DEGERMAN, KANG & WAIMEY**

By: _____
David N. Makous
Attorneys for Plaintiffs, U.S. Marine Surveyors, Inc. and U.S. Vessel Documentation

PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION