# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. MARINE SURVEYORS, INC., a California corporation; U.S. VESSEL DOCUMENTATION, a California corporation,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>EDWARD RIENER, an individual; EDWARD RIENER D.B.A. ELEMENTAL WEB DESIGN, an unknown entity,<br><br>　　　　Defendants. | CASE NO.: 2:16-cv-05360<br><br>**[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; ORDER ON EXPEDITED DISCOVERY** |

1
**[PROPOSED] ORDER**

Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause regarding Preliminary Injunction and Leave to Take Expedited Discovery, was filed with the Court on July 27, 2016. Having reviewed the Application and supporting documents, and any opposition if one was filed, the Court makes the following findings:

1. In this action, Plaintiffs allege that their former web designer, Edward Riener ("Riener") engaged in a calculated and premeditated scheme to hijack Plaintiffs' website domains, and Plaintiffs' thriving marine surveyor and vessel documentation businesses. Plaintiffs contend that Riener has committed and is committing identity theft by holding out to the public that Plaintiffs' web-based businesses are his own.

2. Plaintiffs allege that, on July 1, 2016, Riener demanded $50,000 from Plaintiffs or else he would shut down their vessel documentation website, vesseldocumentation.us ("VD Website"). Plaintiffs refused to pay the demand, claiming that they were the rightful owners of the VD Website.

3. Within hours of the demand, Riener used his access to the administrative logins, usernames and passwords (which he obtained from Plaintiffs during the course of providing management services for the VD Website) to shut down the website and lock out Plaintiffs from access to the VD Website, as well as their email, web hosting and server accounts used to conduct the vessel documentation business.

4. Riener obtained access to Plaintiffs' trade secrets, including their businesses, financial, operational, and customer information which Plaintiffs used in interstate commerce in the ordinary course of their business.

5. On or about July 10, Riener reactivated the VD Website under a slightly different name, "Boat Documentation US." Plaintiffs also discovered that traffic directed toward their other website, usmarinesurveyors.com ("USMS Website") rerouted to the VD Website, now under the "Boat Documentation US" name. Defendants are presently advertising the VD Website through sponsored paid-for advertising on Bing, Yahoo! and Google search engines.

6. Plaintiffs have demonstrated that their customers are actually confused and have been deceived into believing that Riener's website and vessel documentation business is that of Plaintiffs.

7. Plaintiffs had spent significant sums on business cards, flyers, brochures, logo design, office signage and other marketing material bearing the URL "www.vesseldocumentation.us", which are now unusable due to Riener's unlawful hijacking of Plaintiffs' websites and renaming "U.S. Vessel Documentation" at vesseldocumentation.us to "Boat Documentation US" under the existing URL.

8. Plaintiffs are continuing to receive notifications that Riener is logging into Plaintiffs' emails and changing the recovery email account to his name.

9.  In order to remain in business despite Riener's taking of the VD Website and USMS Website, Plaintiffs were forced to establish an entirely new vessel documentation website, uscgdocumentation.us, with another developer on an emergency basis from July 5 to July 15, 2016.  However, Riener continues to thwart Plaintiffs' attempts to resume business.  Plaintiffs allege that they have reason to believe that Riener engaged in "click fraud" by releasing an Internet spiderbot that uses up Plaintiffs' allotted pay-per-clicks from Google, Bing, Yahoo!, Gemini and other search engines for sponsored keyword searches, thus causing Plaintiffs' uscgdocumentation.us website to cost more per click ($50 instead of $3) and to be featured less as a sponsored word, giving Riener an unearned and unfair advantage.  Riener has thus forced a bidding war, using Plaintiffs' own VD Website, to compete for web traffic.  The cost to Plaintiffs to compete with its own website, now under the Boat Documentation US name, is over $1,500 per day instead of $400 per day.

10.  A temporary restraining order is a provisional remedy designed to preserve the status quo and prevent irreparable loss of rights prior to judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). A party seeking temporary injunctive under Rule 65 bears the burden of showing either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Walczak v. EPL*

*Prolong, Inc.*, 198 F.3d 725, 730-31 (9th Cir. 1999); *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987).

11.   Plaintiffs have met their burden pursuant to Federal Rule of Civil Procedure 65.

12.   Plaintiffs have demonstrated a probability of success on the merits, much less that serious questions are raised as to the Defendants' conduct. Plaintiffs have shown the Court:

    A. Plaintiffs are likely to prevail in their false advertising claim under Section 1125(a) of the Lanham Act, as Defendants are intentionally causing rampant confusion at Plaintiffs' expense, and hence are "likely to cause" consumers to mistakenly believe that defendants are Plaintiffs.

    B. Plaintiffs are likely to prevail on their Unfair Competition claim under California Business & Profession Code Section 17200, as An action for unfair competition section 17200 is "substantially congruent" to a trademark infringement claim under the Lanham Act.  <u>In*t'l Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 916 (9th Cir.1980)</u>. Under both, the test is "whether the public is likely to be deceived or confused by the similarity of the marks."  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.1988) (citations omitted).

    C. Plaintiffs likely to succeed on their claim for tortious interference with prospective economic advantage, because Defendants intentionally used a mark to deliberately interfere with Plaintiffs' prospective customers, and Defendants intentionally acted to deceive customers as to the origin of their services.

    D. Plaintiffs are likely to succeed on the merits of their conversion claim, as Plaintiffs owned two businesses and Defendants wrongfully dispossessed plaintiffs of both of them, as well as their revenues and assets, by covertly taking ownership of them.

    E. Plaintiffs have shown likelihood that Defendants have malicious intent and have committed cyberpiracy by registering, trafficking, converting, and using Plaintiffs' domain names and websites.

    F.  Plaintiffs have also shown that Defendants have engaged in "click fraud," which the Court finds constitutes an unlawful business practice and a violation of the Computer Fraud and Abuse Act ("CFAA") and Section 502 of the California Penal Code.

13. Plaintiffs have demonstrated that immediate and irreparable injury will result to Plaintiffs if the defendants are allowed to continue operating the VD Website pending trial on the merits of the complaint for permanent injunctive relief.

14. In a trademark infringement or unfair competition case, "[i]rreparable injury is ordinarily presumed upon a showing of a likelihood of success." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir.2007); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir.1989)("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").

15. Plaintiffs have also demonstrated a likelihood of customer confusion, from which the Court presumes Plaintiffs will suffer irreparable harm. *Metro Publ'g, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("when plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm"); *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1574 (S.D.Cal. 1996), aff'd, 109 F3d 1394 (9th Cir. 1997).

16. Even without this presumption, Plaintiffs have demonstrated the threat of irreparable harm. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (finding threatened loss of prospective customers and goodwill constitutes irreparable harm in the trademark context). In this case, Plaintiffs have suffered significant losses as a result of Defendant's actions. Plaintiffs have shown that Defendants have already taken Plaintiffs' prospective customers. Plaintiffs have thousands of customers and

typically receive 30-60 emails per day. Once Riener shut down Plaintiffs' websites, Plaintiffs were unable to transact any business with their customers, much less make contact with them. Their revenues in recent months have been averaging $35,000 per week on vessel documentation alone. Plaintiffs' revenues have decreased substantially below this average since Riener's actions.

17. Plaintiffs have demonstrated that the remedies available at law, such as monetary damages, are inadequate to compensate for these injuries. Plaintiffs and their employees remain unable to access their emails and are presently unable to communicate with their customers.

18. Also considering the balance of hardships between the parties, a remedy in equity is warranted. Plaintiffs are suffering, and will continue to suffer, irreparable injuries to their businesses if Defendants are not restrained and enjoined from committing tortious acts.

19. Courts have allowed plaintiffs to conduct expedited discovery in relation to early injunctions in cases involving claims of infringement and unfair competition. See *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, 2010 US Dist. LEXIS 6395, *2 (N.D. Cal. Jan. 7, 2010) (allowing expedited discovery when "[e]xpedited discovery will allow plaintiff to determine whether to seek an early injunction."). Moreover, "courts have recognized that good cause is *frequently* found in cases involving claims of infringement and unfair competition." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)

(emphasis added). Here, Plaintiffs seek expedited discovery to prevent alleged infringement of its intellectual property and to forestall allegedly irreparable harm associated with a loss of market share and consumer goodwill. *See Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.")

20. Plaintiffs have demonstrated good cause for expedited discovery. *See American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (setting forth factors considered in determining whether good cause justifies expedited discovery).

21. Plaintiffs have produced evidence that provides a reasonable basis for Plaintiffs' belief that Defendants are committing tortious conduct and irreparably damaging Plaintiffs' businesses and goodwill. This evidence, together with evidence of Defendants' ongoing communications with Plaintiffs' customers, supports Plaintiffs' request for expedited discovery. The information plaintiffs seek to discovery may prove or disprove their claims in the preliminary and permanent injunction hearing.

**IT IS HEREBY ORDERED THAT:**

Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction is GRANTED.

Defendants Edward Riener and Edward Riener d.b.a. Elemental Web Design ("EWD"); Defendants' officers, agents, servants, employees and attorneys; and all other persons acting in concert or participation with them, directly or indirectly, by use of any means or instrumentality, are ORDERED TO CEASE and are hereby TEMPORARILY RESTRAINED FROM:

    a. Operating, using, distributing, licensing, selling, developing, displaying, delivering, advertising and/or otherwise marketing or disposing of Plaintiffs' prior operated websites vesseldocumentation.us and usmarinesurveyors.com, and their content;

    b. Operating, using, distributing, licensing, selling, developing, displaying, delivering, advertising and/or otherwise marketing or disposing of any domain name or web site content previously used on the vesseldocumentation.us and/or usmarinesurveyors.com sites;

    c. Pointing to or from, or redirecting users to or from usmarinesurveyors.com, boatdocumentation.us, or vesseldocumentation.us, or any other newly registered or used proxy domain name created by you for these purposes;

    d. Operating any of Plaintiffs' businesses;

    e. Using or disposing of any of Plaintiffs' trade secrets;

    f. Using or registering any of Plaintiffs' business, corporate, or domain names including usmarinesurveyors.com, vesseldocumentation.us, or uscgdocumentation.us ;

    g. Using, reading, responding to, destroying, blocking or otherwise disposing of emails directed to info@vesseldocumentation.us, nvdc@vesseldocumentation.us, john@vesseldocumentation.us, maria@vesseldocumentation.us, and any other vesseldocumentation.us email addresses.

    h. Using, distributing, selling, developing, displaying, delivering, altering, advertising and/or otherwise marketing in any fashion on Plaintiffs' prior social media accounts (e.g., Facebook, Instagram) in any fashion.

    i. Using Plaintiffs hijacked websites usmarinesurveyors.com, www.vesseldocumentation.us, and the linked url www.boatdocumentation.us (and any other unknown urls Defendants may be using) to transact Plaintiffs hijacked marine surveying or vessel documentation businesses.

    j. Engaging in any vessel documentation and marine surveyor business during the pendency of this litigation;

    k. Sabotaging any of Plaintiffs businesses by directly or indirectly causing false clicks or click fraud in any of the businesses of John

Soria, including USCGDocumentation.us, on any place where online pay per click sponsored key word advertisements appear, such as are available on search results in Google, Bing, Yahoo, Gemini, and all others.

Defendants Edward Riener and Edward Riener d.b.a. Elemental Web Design ("EWD"); Defendants' officers, agents, servants, employees and attorneys; and all other persons acting in concert or participation with them, are further ORDERED to immediately forward, deliver to, restore to, account to, and/or transfer to Plaintiffs the following:

a. all emails at any time after June 30, 2016 directed to usmarinesurveyors.com, info@vesseldocumentation.us, nvdc@vesseldocumentation.us, john@vesseldocumentation.us, maria@vesseldocumentation.us, and any other vesseldocumentation.us email address – and retaining no copies.

b. full control of both usmarinesurveyors.com, and vesseldocumentation.us websites, domain names and businesses;

c. all files and information of my clients' businesses including but not limited to all business, confidential and trade secret information, financials, email files, customer actions and activities, past and present, all of Plaintiffs' business and personal communications,

        customer identities and preferences, payment histories revenues and profitability - and retaining no copies;

    d. all business conducted or attempted from or on account of the hijacked businesses (US Marine Surveyors, Inc. and US Vessel Documentation), including all revenues received, and actions taken after June 30, 2016;

    e. all logins, usernames and passwords of any kind or character now, or in the past associated with the Plaintiffs websites, usmarinesurveyors.com and vesseldocumentation.us, by providing Plaintiffs and its agents with full access and control of these sites;

    f. all logins, usernames and passwords of any kind or character now, or in the past, associated with the access and control of all social media websites and pages for Plaintiffs' businesses, such as Facebook, Googleplus page and any others.

Such order to remain in effect until _____ a.m. / p.m. on _____, 2016.

Plaintiffs shall serve a copy of this order on the defendants (or their counsel, if known), by personal delivery, fax or email, on or before \_\_\_\_\_ a.m. / p.m. on _____, 2016; and

Defendants shall respond by filing papers, on or before \_\_\_\_\_ a.m. / p.m. on _____, 2016, contemporaneously serving a copy on

Plaintiffs' counsel by personal delivery, fax or email, to SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE to enjoin Defendants; officers, agents, servants, employees and attorneys; and all other persons acting in concert or participation with them, directly or indirectly, by use of any means or instrumentality, from the same activities identified above of which Defendants are temporarily restrained pending resolution of the complaint for permanent injunctive relief herein.

Accordingly, it is further ORDERED that Plaintiffs' application for leave to take expedited discovery is granted consistent with this order. Plaintiffs are granted leave to serve document requests pursuant to Federal Rule of Civil Procedure 34 immediately and Defendants are ordered to respond to any such document requests within 5 days. Plaintiffs are further granted leave to conduct oral depositions pursuant to Federal Rule of Civil Procedure 30 immediately provided that they provide Defendants with at least 2 days-notice of such depositions.

DATED: July __, 2016

_____
The Honorable Percy Anderson
United States District Judge